UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MISTY L. SWIFT,

    Plaintiff,

v.

THE LAW FIRM OF DEREK WILLIAMS,
LLC d/b/a INFINITE LAW GROUP,

    Defendant.
_____/

Case No. 3:23-cv-00577

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff REGINALD G. ALLEN ("Plaintiff"), by and through the undersigned, complains as to the conduct of RCS CAPITAL PARTNERS, INC. ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Florida Credit Services Organizations Act ("FCSOA") under Fla. Stat. § 817.700 *et seq.*, the Florida Credit Counseling Services Act ("FCCSA") under Fla. Stat. § 817.801 *et*

*seq.,* as well as claims of Negligence and Breach of Fiduciary Duty, stemming from Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA, the FCSOA and the FCCSA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C § 1692, as well as 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business, and a substantial portion of the events or omissions giving rise to the claims occurred, within the Middle District of Florida.

## PARTIES

5. Plaintiff is a consumer over 18 years of age residing in Jacksonville, Florida.

6. Defendant is a credit repair organization and debt management provider that claims to "work immediately to stop creditor harassment and provide a fresh financial start" to its clients. Defendant is a limited liability company organized under the laws of the state of Arkansas with its principal place of business located at 400 West Capital Avenue, Suite 1700, Little Rock, Arkansas.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

8. In approximately September 2022, Plaintiff was interested in attempting to resolve a number of debts appearing on her credit report and which were negatively impacting her credit situation, and began researching various credit repair and debt consolidation companies.

9. Plaintiff subsequently happened upon Defendant.

10. Upon speaking with Defendant, Defendant explained the nature of its services and that Plaintiff would make monthly payments to Defendant, with which Defendant would attempt to resolve the various debts Plaintiff would enroll in the program.

11. Defendant further represented that Defendant would get to work promptly and prevent Plaintiff's creditors from contacting Plaintiff.

12. Additionally, Defendant represented, both explicitly and by implication, that ultimately Defendant's services would have a positive impact on her credit situation as Plaintiff would be able to resolve obligations faster than if she were to do things on its own, in turn reducing her credit load and diminishing such debt's impact on

3

her credit, and that its services would reestablish Plaintiff's credit and provide her a fresh financial start.

13. Defendant further repeatedly represented the efficacy of its services and its ability to achieve better results than its competitors.

14. Plaintiff thereafter agreed to utilize Defendant's services, and entered into a contract for the provision of such services and enrolled a number of obligations in Defendant's program.

15. Plaintiff began making bi-weekly payments to Defendant which totaled approximately $117.00.

16. Upon information and belief, Defendant withdrew funds from Plaintiff's monthly payments prior to providing any services to Plaintiff and/or before completely performing the services Defendant agreed to perform for Plaintiff.

17. Plaintiff has maintained these payments until the present.

18. After signing up with Defendant, Plaintiff was told by that, rather than paying her creditors or keeping up with payments, she should instead divert those funds to Defendant who would use the funds to enter into negotiations with Plaintiff's creditors.

19. Plaintiff was not behind on any of the enrolled debts prior to using Defendant's services.

20. Plaintiff believed Defendant's provision of advice was in her best interest; however, Plaintiff subsequently suffered a diminishment to her credit score as she began defaulting on enrolled obligations.

21. Defendant failed to clearly inform Plaintiff of this information prior to Plaintiff signing up with Defendant.

22. Despite Plaintiff's maintenance of payments through the present, Defendant has failed to perform the services it represented would be performed in the manner such services were represented.

23. Plaintiff was led to believe that Defendant would begin entering into negotiations with her creditors promptly; however, after months of making payments, Defendant failed to enter into any negotiations or otherwise prevent Plaintiff from continuing to be bombarded with collection calls and correspondences.

24. Additionally, Plaintiff was provided "scripts" by Defendant that instructed Plaintiff to provide inaccurate information regarding Plaintiff and her financial situation to the entities that were contacting Plaintiff for payments.

25. Rather than providing the services it represented it would perform, Defendant instead persisted in charging Plaintiff monthly fees for various services and charges before such services were fully performed.

26. Defendant's conduct in improperly charging Plaintiff for services before such services were fully performed diverted funds from Plaintiff's dedicated account that could and should have gone towards Defendant negotiating Plaintiff's obligation.

27. Upon information and belief, Defendant diverts its customers' funds in this manner so as to intentionally decrease the pool of available money from which Defendant can reach settlements, thus increasing the length of time it takes consumers to pay down their enrolled debts, in turn allowing Defendant to continue to charge unlawful and inappropriate fees for longer than necessary to deliver the represented results.

28. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

29. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management providers.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

30. Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

32. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

33. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history and help reestablish Plaintiff's credit, at it would allow her to resolve obligations which otherwise would go unresolved.

### a. Violations of CROA § 1679b(a)(1)

34. The CROA, pursuant to 15 U.S.C. § 1679b(a)(1), provides that no person may "make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit

standing, or credit capacity to – any person – who has extended credit to the consumer."

35. Defendant violated the above provisions of the CROA through its conduct in counseling and advising Plaintiff to make statements to her creditors that were untrue and misleading. Defendant instructed Plaintiff, through provided scripts and other means, to make untrue and misleading representations to her creditors upon enrolling in Defendant's program. Defendant engaged in this conduct so as to paint Plaintiff in a false light so as to purportedly increase the efficacy of its services.

**b. Violations of CROA §§ 1679b(a)(3)-(4)**

36. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

37. Defendant violated the above provisions of the CROA through its generally deceptive representations regarding the nature of the services it would provide Plaintiff. Defendant advised that it would get to work promptly and would handle all of Plaintiff's creditors. However, after months of making payments, Plaintiff was

still being harassed repeatedly by her creditors despite Defendant's suggestions that its services would prevent those contacts.

38. Defendant further violated the above provisions of the CROA through the deceptive and misleading manner in which it charges consumers fees in a manner designed to increase the number and amount of payments consumers make to Defendant for its services. Defendant's charging of premature and unlawful fees depletes the pot from which further settlements can be made, in turn increasing the length of time consumers are subject to Defendant's program and thus subject to further charges.

39. Further, Defendant violated the CROA through its deceptive and misleading instruction that Plaintiff's best course of action would be to cease paying her creditors and instead divert those funds to Defendant. Defendant failed to properly disclose the impact this course would have as it was represented to Plaintiff that, ultimately, Defendant's program would improve her credit. However, its services had the exact opposite effect. Upon information and belief, Defendant has determined that, if it was honest about the true impact of its services, consumers would be reluctant and less likely to sign up for Defendant's services.

40. Defendant further violated the above provisions of the CROA through its fraudulent conduct in making certain representations designed to induce consumer participation in its program, only to cut against those representations in the contracts

it enters into with consumers. Defendant engages in this deceptive and misleading conduct in order to get consumers on the hook, only to feebly attempt to justify its failures and conduct through contractual language that runs contrary to its representations made to consumers. That Defendant's contracts with consumers contains a merger and integration clause seeking to remove its representations from the nature of the parties' relationship only further illustrates the fraudulent and deceptive nature of its conduct.

   c. **Violations of CROA § 1679b(b)**

41. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

42. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant charged Plaintiff various monthly fees before fully completing any of the services it agreed to perform for Plaintiff.

   d. **Violations of 15 U.S.C. § 1679c**

43. The CROA, pursuant to 15 U.S.C. § 1679c, outlines a number of disclosures that credit repair organizations must provide to consumers prior to contracting with consumers for the provision of services.

44. Defendant violated the above provision of the CROA through its failure to provide Plaintiff the disclosures it was required to provide to Plaintiff.

   e. **Violation of CROA § 1679f(b)**

45. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

46. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded under the CROA. Defendant's contract contains a number of provisions which attempt to broadly shield itself from liability against protections afforded under CROA. Defendant's contract further seeks to apportion costs and fees amongst litigants in a manner contrary to the protections provided by the CROA. Furthermore, Defendant's contract contains a merger and integration clause which constitute an attempt by Defendant to insulate itself from liability in connection with the manner in which it represented its services to Plaintiff prior to Plaintiff signing up with Defendant.

47. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, MISTY L. SWIFT, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

48. Plaintiff restates and realleges paragraphs 1 through 29 as though fully set forth herein.

49. Plaintiff is a "buyer" as defined by Fla. Stat. § 817.7001(1).

50. Defendant is a "credit service organization" as defined by Fla. Stat. § 817.7001(2)(a).

51. Any carve out for attorneys does not apply to Defendant as it is regularly and continually provides services to consumers designed to improve their credit.

**a. Violation of FCSOA § 817.7005**

52. The FCSOA, pursuant to Fla. Stat. § 817.7005, provides a list of prohibited conduct for credit services organizations.

53. Pursuant to Fla. Stat. § 817.7005(1), a credit service organization must not charge or receive any money or other consideration prior to full and complete performance of its services, unless it has maintained a surety bond with the state, in which case the sums paid must be retained until full performance of the services are rendered.

54. Defendant violated Fla. Stat. § 817.7005(1) through its charging Plaintiff prior to full and complete performance of its services.

55. Pursuant to Fla. Stat. § 817.7005(3), a credit service organization shall not "make, or counsel or advise any buyer to make, any statement that is false or misleading or that should be known by the exercise of reasonable care to be false or misleading, or omit any material fact to a consumer reporting agency or to any person who has extended credit to a buyer or to whom a buyer is applying for an extension of credit with respect to the buyer's credit worthiness, credit standing, or credit capacity."

56. Defendant violated the above provision of the FCSOA in much the same way it violated § 1679b(a)(1) of the CROA.

57. Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot "[m]ake or use any false or misleading representations or omit any material fact in

the offer or sale of the services of a credit service organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit service organization, notwithstanding the absence of reliance by the buyer."

58. As outlined above, Defendant violated the above referenced provision of the FCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

   **b. Violations of FCSOA § 817.702**

59. The FCSOA, pursuant to Fla. Stat. § 817.702, requires credit services organization to provide consumers a number of disclosures, outlined in Fla. Stat. § 817.703.

60. Defendant violated § 817.702 by failing to provide the disclosures required under Florida law.

   **c. Violations of FCSOA § 817.705**

61. The FCSOA, pursuant to Fla. Stat. § 817.705(1), provides that "[a]ny attempt by a credit service organization to have a buyer waive rights given by this part is a violation of this part."

62. Defendant violated the above provision of the FCSOA in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff, MISTY L. SWIFT, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Fla. Stat. § 817.706(1);

c. Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 817.706(1);

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. § 817.706(1); and,

e. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE FLORIDA CREDIT COUNSELING SERVICES ACT

63. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

64. Plaintiff is a "person" as defined by Fla. Stat. § 817.801(5).

65. Defendant is a "credit counseling agency" as defined by Fla. Stat. § 817.801(1).

66. The exemption for attorneys licensed in the state of Florida does not apply to Defendant as Defendant was not engaged in the practice of law in the state of Florida in connection with the services provided to Plaintiff.

**a. Violation of FCCSA § 817.802**

67. The FCCSA, pursuant to Fla. Stat. § 817.802, governs the fees that can properly be charged by a credit counseling agency.

68. Defendant violated § 817.802 through the unlawful and exorbitant nature of its assessed fees. Defendant charges far more for its services that permitted under Florida law which caps fees at either 7.5% of enrolled debt or $35 per month.

b. **Violations of FCCSA § 817.805**

69. The FCCSA, pursuant to Fla. Stat. § 817.805, provides that "[a]ny person engaged in debt management or credit counseling services shall disburse to the appropriate creditors all funds received from a debtor, less any fees permitted . . . within 30 days after receipt of such funds."

70. Defendant violated § 817.805 by routinely taking Plaintiff's payments and failing to disburse those payments to her creditors within 30 days of receiving the funds from Plaintiff. Plaintiff made payments for months, yet Defendant did nothing with the funds except collect its exorbitant and unlawful fees without entering into any negotiations with Plaintiff's creditors.

71. Pursuant to Fla. Stat. § 817.806(1), "[a]ny person who violates any provision of [the FCCSA] commits an unfair or deceptive trade practice as defined by [Fla. Stat. § 501.201 *et seq.*]. Violators shall be subject to the penalties and remedies provided therein. Further, any consumer injured by a violation of this part may bring an action for recovery of damages. Judgment shall be entered for actual damages,

but in no case less than the amount paid by the consumer to the credit counseling agency, plus reasonable attorney's fees and costs."

WHEREFORE, Plaintiff, MISTY L. SWIFT, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Award Plaintiff actual damages in an amount to be determined at trial pursuant to Fla. Stat. §§ 501.211(2) & 817.806;

c. Enter a declaratory judgment finding that the above referenced conduct is in violation of the above referenced statutes and regulations, pursuant to Fla. Stat. § 501.211(1);

d. Award Plaintiff equitable relief, including enjoining Defendant from further violations, pursuant to Fla. Stat. §501.211(1);

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. §§ 501.2105 & 817.806(1); and,

f. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT IV – NEGLIGENCE

72. Plaintiff restates and realleges paragraphs 1 through 29 as though fully set forth herein.

73. The elements of a negligence cause of action are: (1) existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach.

74. Defendant owed Plaintiff a duty of care to provide its represented legal and financial services in a competent manner. Defendant represented to Plaintiff that it would provide her certain services in association with the services it was agreeing to perform. In so doing, Defendant assumed an extra-contractual duty of care which it owed to Plaintiff to perform such services. Defendant breached that duty of care through the negligent advice it provided Plaintiff regarding the best way to handle her obligations. It was negligent for Defendant to tell Plaintiff to cease paying her creditors given the extent to which this advice adversely impacted and harmed Plaintiff. Defendant repeatedly breached its duty to act in Plaintiff's interest, instead bilking Plaintiffs out of hundreds of dollars in payments for its own benefit.

WHEREFORE, Plaintiff, MISTY L. SWIFT, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff their actual damages in an amount to be determined at trial;

c. Award Plaintiff equitable relief, including enjoining Defendant from further violations of law;

d. Award Plaintiff costs and reasonable attorneys' fees; and,

## COUNT V – BREACH OF FIDUCIARY DUTY

75. Plaintiff restates and realleges paragraphs 1 through 29 as though fully set forth herein.

76. Defendant owed Plaintiffs a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide legal-services to Plaintiffs, inherently rendering it her fiduciary with regards to the financial services it was agreeing to perform.

77. Defendant breached its fiduciary duty owed Plaintiff given the nature of the "services" it provided. Despite purporting to have Plaintiffs' best interest in mind, Defendant caused Plaintiffs significant hardship through its provision of objectively and unreasonably misguided advice including the indication that Plaintiff should cease paying her creditors and instead pay Defendant. Defendant completely disregarded the fiduciary duty it owed Plaintiff, and Defendant's breach of such duty caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, MISTY L. SWIFT, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Defendant from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate

Dated: May 16, 2023 	 Respectfully submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
Counsel for Plaintiff
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com